### H. B. ADAMS ET AL. v. J. V. DIGNOWITY ET AL.

#### No. 247.

1. **Municipal Corporations—Deed by, Invalid, When.**—A deed made in behalf of a corporation, and not authorized by some act or resolution of the corporation or its governing body, and not afterwards ratified by the corporation, is not the act of the corporation, nor binding upon it.

2. **Same—Act of Binding, When.**—A conveyance of real estate regular on its face, and under the corporate seal, executed by a municipal corporation having the power to dispose of its property, will be presumed to have been executed in pursuance of that power, and it is not necessary for the grantor or party claiming under it to produce the special resolution or ordinance authorizing its execution.

3. **Same—Powers of.**—Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute.

4. **Same—Trespass to Try Title—Burden of Proof.**—A conveyance made on behalf of a corporation by its proper officers, and properly executed, will be presumed to be fully effective for all purposes, and the burden of proof is upon the party impeaching the conveyance to establish the fact that it was executed without authority, and failing in this proof, he is not entitled to recover, though the authority to make the conveyance may not have been expressly shown by the appellee.

APPEAL from Bexar. Tried below before Hon. GEO. H. NOONAN.

*Simpson & James* and *George C. Altgelt*, for appellants.—1. A conveyance made in behalf of a corporation, and not authorized by some act or resolution of the corporation or its governing body, and not afterwards ratified by the corporation, is not the deed of the corporation nor binding upon it. Such conveyance is invalid except so far as it may be authorized. 2 Dill. Mun. Corp., sec. 450; Boone on Corp., sec. 54; Mora. on Corp., sec. 166; Green v. Hugo, 81 Texas, 452; Fitzhugh v. Land Co., 81 Texas, 306.

2.  A deed made by an officer or agent in behalf of a corporation, without authority in the charter or from the governing body of the corporation, is invalid.

*Ogden & Harwood* and *Peter Shields*, for appellees.—A conveyance made upon behalf of a corporation by its proper officer, and properly executed, will be presumed to be fully effective for all purposes, and the burden of proof is upon the party impeaching the conveyance to establish the fact that it was made without authority.

NEILL, ASSOCIATE JUSTICE.—This is a suit in trespass to try title, brought by H. B. Adams and E. D. L. Wickes against James V. Dignowity, Dan Sullivan, and Sam Johnson, to recover a parcel of ground now in the corporate limits of the city of San Antonio, which is described as that lot number 9, range 2, district 1, which contains 15½ acres, bounded as follows:  Beginning at the southeast corner of lot number 6, range 2, district 1, being a stake set in the north line of the Railroad reserve; thence north 20 degrees east, 700 76-100 varas with the east line of lot number 6, to a stake set at the intersection of this line with the east line of the old two-league city grant; thence south with said old two-league grant line 745 74-100 varas to a stake set on the line of the Railroad reserve; thence north 70 degrees west 255 60-100 varas with north line of said Railroad reserve to place of beginning. The said lot number 9 being a triangular piece of land, having its apex near the old Seguin road, and bounded west by said lot number 6, east by that lot number 9, range 2, district 1, which contains 125 acres, and is north of the Railroad reserve.

Pending the suit E. D. L. Wickes died, and his heirs were made parties plaintiff.

The defendants Dignowity and Sullivan answered by a plea of not guilty, and the defendant Johnson entered a disclaimer.

The cause was tried on the 5th day of October, A. D. 1892, before the court without a jury, and resulted in a judgment in favor of the defendants, from which the plaintiffs appealed.

*Conclusions of Fact.*—1.  On the 26th day of February, 1845, the mayor of the city of San Antonio, by authority of its common council, and Thomas J. Devine entered into a contract by which Devine agreed to act as the legal adviser and general counsel of the city, and agreed with the mayor to undertake and perform all legal business appertaining to said city which it might be necessary for him to do, when required by the mayor.  The mayor, for and in behalf of the city, agreed to pay him an annual fee of $100 and a sum of money equivalent to one-eighth of the value of the property recovered in a suit to be instituted by said Devine in behalf of the city for the recovery of that land then claimed by San Antonio, and within its ancient limits; saving and excepting *two leagues* then in the undisputed possession of

the city. And that upon the successful termination of the suit relative to the lands, the city should employ a surveyor to survey the lands included within the disputed limits, and owned by the city of San Antonio, which tract was to be surveyed in lots of 100 acres, marking the corners of said lots with stakes, and numbering the beginning corner of each and every lot with the numerals upon the stakes of 1, 2, 3, 4, 5, etc., and entering upon a book, to be provided him by the corporation, a plat of the tract surveyed with the lots designated thereon and marked by the numerals aforesaid, which plat should be executed and returned to the office of the corporation within three months from the date of final settlement of the suit. That upon the return of such plat and survey, the city should advertise for sale a portion of the land so recovered, and the sale to take place within three months from the date of the return of the survey, such sale should not be of a less portion than one-fourth of the lands. That an appraiser should be appointed by the corporation, who should, in connection with an appraiser to be appointed by Devine, appraise all the lands recovered as aforesaid—appraising all lands surveyed as aforesaid in separate tracts—and return their appraisements under their hands and seals, which appraisements should be entered upon each lot numbered upon the plat aforesaid, according to its number. That upon the return and entry of such appraisements, the corporation should issue drafts to the amount of one-eighth of the appraised value of said tract, the drafts to be in sums of $100, payable to Thomas J. Devine or bearer, and receivable in payment of all dues or debts accruing to said corporation. That upon the sale of the lots as provided, the proceeds should be appropriated to the liquidation of the claim of said Devine. That after the sale Devine should be at liberty to enter, by writing his name, upon the lots numbered and appraised in said book which had been offered or advertised for sale, and a deed made to him of all lots so advertised for sale that then may have been unsold at time of his entering the same; liberty having been given him to enter as many as would amount to the value of his fee remaining unpaid at time of entering the same.

2. The suit contemplated by the contract was instituted in behalf of the city by Thomas J. Devine, and prosecuted by him to final judgment in the Supreme Court, recovering possession and establishing the city's title to the lands sued for. The result of the suit being known to the city council, it, on the 23rd day of January, 1852, duly authorized and required F. Giraud, city surveyor, "to proceed forthwith to survey and lay off all that tract of land lately recovered by the decision of the Supreme Court of Texas, in favor of the city of San Antonio, in compliance with the requisition of the contract made and entered into February 26, 1845, between the mayor of the city of San Antonio and Thomas J. Devine."

3. On April 26, 1852, the city council accepted a proposition made to it by Devine to modify and change the contract of 1845 so as to

permit the city surveyor to survey the land recovered into such sized tracts as he might deem most advantageous to the city.

4. Francis Giraud, city engineer, surveyed and laid off the land and returned a map or plat thereof, which was acted upon by the city council and sales made thereby. So much of his map as is applicable to the premises in controversy is here shown.

[SEE MAP A.]

The red lines are the lines of the two leagues that were not involved in the suit brought by Devine, the land recovered in said suit being outside of said lines and adjoining the two leagues.

5. After the lots had been surveyed by the city engineer, Thomas J. Devine proposed to the council that one-half of the property, after being appraised according to the terms of the contract, should be advertised sixty days and sold for one-fifth cash, the balance on a credit of fifty years, and that one-half of the cash received on the day of sale be paid to him, and the scrip issued to him, as per agreement, to bear 8 per cent interest. This proposition was accepted by the council on August 26, 1852, and the council then ordered, "that there should be exposed for sale at public outcry, at the city hall door, in the city of San Antonio, on the second Monday in November next, and each succeeding day until sold, after having been advertised sixty days in public prints and otherwise, one entire half of the lands recovered by the city of San Antonio * * * by a late decision of the Supreme Court, laid off and surveyed, as heretofore provided, in lots containing four to one hundred acres, as per plat to be seen in city hall," and that the terms of sale be one-fifth of the purchase money paid cash on day of sale, and balance bearing interest from that day at the rate of 8 per cent per annum until paid, for a time not exceeding fifty years, payable semi-annually, with a lien on the lots and improvements thereon. It was also "resolved, that a committee of three, composed of Alderman A. A. Lockwood, John S. McClellan, and J. A. Urratia, be and is hereby appointed, whose duty it shall be to regulate the mode of sale, designating the portion of property to be sold, the manner of advertisement, the form of deeds to be executed by the city to the purchasers, and the style of scrip to be issued to the city attorney in compliance with the contract, all of which shall be submitted to the board for ratification, by report." On motion, the mayor was added to the committee.

6. At a meeting of the council, on September 5, 1852, the following resolution was approved, viz: "The committee who were appointed to draft a form of advertisement and make arrangements to sell the city lands, beg to report the accompanying document, marked 'form of advertisement,' for adoption. They recommend its advertisement in the following papers: San Antonio Ledger and Western Texan, Victoria Ledger * * * (a number of these papers are named), the

MAP A.

PLAT B.

Texas papers to publish until day of sale, and forward bills to Ledger office for settlement.    The other papers to publish within ten days of sale.    The committee recommend that the property be sold in alternate blocks of —— lots each, with the privilege to the purchaser of buying adjoining lots at appraised value if no more be offered.    The committee recommend the printing of 500 handbills, copies of the above advertisement, in Spanish and German, for distribution.    The committee recommend the appointment of appraisers according to terms of the contract with T. J. Devine.    The committee recommend the appointment of a committee of three to superintend the sale.    The committee asks to be discharged.    A. A. Lockwood, chairman of committee. And the secretary ordered to forward copy for publication to the various papers, as in said report.''

The advertisement reported by the committee and adopted by the council was not offered in evidence by either party.

7.    On November 4, 1853, the following report of the committee to regulate the sale was received and adopted by the city council, viz: ''The committee to whom was referred the decision of the manner of selling the city property would recommend the offering for sale every four alternate lots, commencing at number 35, range number 1, district number 2, and that it be discretionary with a committee to be appointed to order sale of any other lots that purchasers may require during the progress of the sale.    The mayor, Urratia, and Huffmeyer, a committee to superintend the sale, and the said committee, with the exception of the mayor, receive $2 per diem during the discharge of such duties.''

8.    The land in controversy is shown by the following plat of a survey made by Locke for the appellants.

[SEE PLAT B.]

It is the triangle within the red lines with its apex near the Seguin road, and is bounded west by lot 6, east by line of the two-league grant, and south by the Railroad reserve, the line of the two-league grant being always well known and established on the ground; the west boundary line of lot 6 being the west boundary line of lot 9 as surveyed by and on the plat of F. Giraud, as before stated and indicated.

9.    The original plaintiff, E. D. L. Wickes, died on May 30, 1892, since the institution of this suit, intestate; there has been no administration nor necessity therefor upon his estate; and the plaintiffs, Eugenia A. Thompson Wickes, Sallie C. Wickes, Caroline E. Scranton (wife of Geo. H. Scranton), Julia A. Swart, Albert L. Wickes, Annah Belle Burns (wife of Zenos Burns), and Rebecca B. Mather (wife of W. D. Mather), are his heirs at law.

10.    The chain of title under which appellants claim the land in controversy consists (1) of a deed duly recorded from the city of San Antonio to H. B. Adams and E. D. L. Wickes, whereby said city, in

consideration of one hundred twenty 09/100 dollars paid into its treasury, conveyed in fee simple to said Adams and Wickes, "all that certain tract or parcel of land lying and being in the State of Texas, county of Bexar, in the city tract known and described on the city maps as lot number 9, in range number 2, and district number 1, containing 15½ acres of land more or less, purchased from the city of·San Antonio, April 10, 1855, by John A. Rogers, and situated in the old San Antonio tract, but outside of the present city limits. For chain of title, see Bexar County records, book O, number 2, pages 491 and 492; book P, number 2, pages 433 and 434, and book number 1, on page 8." It recites that H. B. Adams and E. D. L. Wickes had paid into the city treasury the balance of purchase money and interest due the city to that date. The deed is dated June 10, 1870, and filed for registration in the office of the county clerk of Bexar County, on the 28th day of June, 1870. It also conveys three other lots.  (2) A deed from William H. Cleveland to H. B. Adams and E. D. L. Wickes, dated the 15th day of June, 1870, whereby said Cleveland conveyed in fee simple to Adams and Wickes all his interest in the aforesaid lot number 9, by the same description contained in the deed from the city of San Antonio above referred to. This deed being duly recorded in book V, number 2, page 401, Bexar County records.  (3) A deed of conveyance in fee simple from Wesley D. Cotton to William H. Cleveland, duly recorded in book S, number 1, page 8, dated September 29, 1859, conveying same lot number 9. This deed recites, that the land was originally sold by the corporation of the city of San Antonio to John A. Rogers, and by the said Rogers to John Latchem, and by said Latchem to Wesley D. Cotton, and by said Cotton to W. H. Cleveland, and that the deed from Latchem to Cotton was dated January 26, 1858, and recorded in book P, number 2, pages 433 and 434; and it stipulated that W. H. Cleveland should assume the balance of the purchase money and interest due the city of San Antonio.  (4) A fee simple deed, duly acknowledged and recorded, from John A. Rogers to John Latchem, dated March 20, 1857, recorded in book O, pages 490 and 492, Bexar County records, conveying the aforesaid lot number 9 by the same description, and reciting that Rogers had purchased said land from the city of San Antonio on April 10, 1855, and that Latchem assumed the payment of the city of San Antonio.

11. The chain of title under which appellees claim the land consists (1) of a deed from the city of San Antonio to Charles Wenzel, dated November 9, 1852, conveying property as follows: Lot 9, range number 2, in district number 1 of the plan of the city lands made and surveyed by Francis Giraud, city engineer, and lying and being in the county of Bexar, and within the limits of the corporation of said city, and fully described, as will appear by reference to the records of the city of San Antonio, containing 125 acres more or less. This deed recites that Wenzel became such purchaser at a sale made on November

8, 1852; that it retains a vendor's lien for four-fifths of the purchase money and the payment of 20 per cent.thereof.   (2)  A deed from Charles Wenzel to William Wagner and wife, dated August 8, 1854, conveying property described as follows:  A tract of land containing 37½ acres, adjoining on the west with the land of Charles Wenzel, on the south adjoining Page branch; said tract running back to Seguin Creek.   For more particular description reference is made to deed from the city of San Antonio to Charles Wenzel, as recorded in the records.   (3)  A deed from William Wagner and wife to Frederick William Urbahn, dated February 9, 1855, describing the land conveyed as follows:  A portion of lot number 9, range number 2, district number 1, and bounded on the north by Seguin street or road, east by a portion of said lot containing 37½ acres and belonging to C. Salzmann, south by Railroad reserve, and on the west by a portion of said lot containing 50 acres outside the two-league tract, the property of Charles Wenzel.   (3)  A deed of trust from Charles Wenzel and wife to Ferdinand Urbahn, trustee, for the benefit of Frederick William Urbahn, to secure him in the performance of a contract, which was dated February 9, 1855, whereby Wenzel and wife conveyed that portion of lot number 9, range 2, district number 1, which is bounded west by that portion of lot number 9, range number 2, district number 1, which lies inside or west of the eastern two-league boundary lines; on the north by a street known as Seguin road or street; on the east by the property of Frederick Urbahn, south by the Railroad reserve, containing 50 acres of land and no more.   (4)  The last will and testament (duly probated) of Frederick William Urbahn, bequeathing and devising all his property to Benjamin Ernest Urbahn.   An inventory of the testator contained the following item:  A portion of lot 9, range 2, district 1, bounded on the north by Seguin street or road, on the east by a portion of said lot containing 37½ acres, belonging to Salzmann; on the south by Railroad reserve, on the west by a portion of said lot containing 50 acres, outside the two-league tract, the property of Charles Wenzel.   The portion contains 37½ acres, and is the same land that was conveyed to Frederick William Urbahn, February 9, 1855, by William Wagner and wife.   (5)  A duly recorded and acknowledged fee simple deed of conveyance from Charles Wenzel and wife to Ferdinand Urbahn, dated July 5, 1856, describing land conveyed as follows: 50 50-100 acres of the land in the town tract of the city of San Antonio, Bexar County, Texas, being 50 50-100 acres to be taken from the western portion of lot number 9, range 2, district 1; 37½ acres, the eastern part, having been sold and owned by Nic Woller, and the portion of said Woller and the portion now conveyed being divided by 37½ acres heretofore sold to and now owned by William Urbahn, the land herein conveyed being bounded as follows: North by Seguin road, south by Railroad reserve, west by lot 6, range 3, district 1, east by the portion heretofore sold to William Urbahn.   It is the mutual understanding by the parties hereto, that Ferdinand Urbahn is to discharge

the indebtedness to the city of San Antonio, being $188, with interest. (6) Final deed from the city of San Antonio to Ferdinand Urbahn, in consideration of payment of balance of purchase money and interest, dated April 10, 1863, releases and conveys 50 acres, the western portion of lot number 9, range 2, district 1, which lot 9 was bid off by Charles Wenzel at a public sale of lands on November 9, 1852, who conveyed his interest in the 50 acres to said Ferdinand Urbahn, July 5, 1856. (7) A deed from Ferdinand Urbahn and wife to William Urbahn, dated September 13, 1865, conveying 50½ acres taken from the western part of lot number 9, range 2, district 1, of the plat of said city lands made by F. Giraud, city engineer, within the limits of the corporation of said city. Said land so conveyed is bounded as follows: On the north by Seguin road, south by Railroad reserve, west by lot 6, range 3, district 1, and on the east by that portion heretofore sold to William Urbahn by Charles Wenzel and wife, and is a portion of the lot sold to Charles Wenzel by the city of San Antonio, November 9, 1852. (William Urbahn was the same person as Frederick William Urbahn, who in his will left all his property to Benjamin Ernest Urbahn.) (8) A final deed from the city of San Antonio to Nic Woller, dated October 17, 1862, recorded January 10th, conveying 37½ acres, the eastern part of lot 9, range 2, district 1, which lot was bid off by Charles Wenzel at a public sale of lands of said city, November 9, 1852, who conveyed said 37½ acres to C. Salzmann, who conveyed to Woller, July 8, 1855. (9) A deed conveying two acres, dated December 31, 1872, from Benjamin Ernest Urbahn, conveying to Theodora Mertz and Gil. Fernandez, which contains the following description and recitals: "One of which is situated in the town tract of the city of San Antonio, taken from the western part of lot 9, range 2, district 1, of the plan of said city lands made by F. Giraud, city engineer, within the limits of the corporation of said city. Said land is bounded north by Seguin road, south by Railroad reserve, west by lot 6, range 3, district 1, east by that portion heretofore sold William Urbahn by Charles Wenzel and wife, and is a portion of the lot sold by the city of San Antonio to Charles Wenzel, November 9, 1852, who with his wife sold this portion to Ferdinand Urbahn, who in compliance with the original conditions of sale received title to the lands hereby conveyed from the city of San Antonio, on April 10, 1863; and on September 13, 1865, sold to William Urbahn and Ernest Urbahn, the portion sold containing fifty acres of land. The other tract being a portion of lot number 9, range 2, district 1, and bounded as follows: North by Seguin road, on east by a portion of said lot containing 37½ acres belonging to Salzmann, south by Railroad reserve, west by portion of said lot containing 50 acres outside the two-league grant, the property of Charles Wenzel, it being the same land conveyed to William Wagner by Charles Wenzel, by deed dated August 8, 1854, and on February 9, 1855, sold by said Wagner and wife to Frederick Urbahn, who is identical with Frederick William Urbahn. This conveyance is

made in compliance with an agreement dated December 22, 1871, made between me and the said Theodora Mertz and Gil. Fernandez. Recorded in book X, 1, page 222." (10) A deed of conveyance from Theodora Mertz to Peter Shiner, conveying all the interest in the lands acquired by the grantor under the foregoing described deed from Benjamin Ernest Urbahn to Theodora Mertz and Gil. Fernandez, dated July 25, 1873, to Peter Shiner all his one-half interest in the land purchased by Theodora Mertz and Gil. Fernandez from Benjamin Ernest Urbahn, by the deed aforesaid, dated December 31, 1872. (11) A deed dated April 11, 1881, from Peter Shiner to Nic Woller (reserving vendor's lien), conveying land as follows: "Being the southwestern part of lot 9, range 2, district 1, containing 30 acres more or less, bounded on the north by the embankment of the Galveston, Harrisburg & San Antonio Railroad, south by that part of the Railroad reserve which the city of San Antonio lately sold to J. H. Kampmann, on the east by the property of the vendor, being the eastern part of said lot number 9, and on the west by the east line of the old two-league tract. The land herein conveyed is the lower part of 87½ acres sold to me by Theodora Mertz and Gil. Fernandez, on July 25 and December 6, 1873, to whom it was sold by B. Ernest Urbahn, on December 31, 1872." (12) A deed dated February 26, 1884, from Emma Shiner, surviving wife and administratrix of the estate of Peter Shiner, deceased, to Nic Woller, conveying a tract of land lying and being in the city of San Antonio, it being a part of lot 9, range 2, district number 1, containing 43¾ acres more or less, sold to her husband Peter Shiner in July and December, 1873, by Gil. Fernandez and Theodora Mertz, to whom it was conveyed by Benjamin Urbahn, on December 1, 1872; reference being made to book X, 1, page 146, and volume 12, page 212. (13) A deed from Carl Salzmann and wife to Nicoles Woller, dated February 8, 1855, recorded July 19, 1855, conveying 37½ acres of land in San Antonio, Texas, part of lot 9, range 3, district 1, of the survey of said city, being the same portion of land sold by Charles Wenzel to Salzmann, by deed bearing date in 1854. (14) A deed of conveyance from Anton Rips and Mary Rips, his wife, to Nic Woller, dated January 28, 1890, and duly recorded, conveying "outlot number 9, range number 2, district number 1, in San Antonio, containing 125 acres more or less, bounded north by Seguin street, east by line of the city grant and property of Kampmann, south by a part of the Railroad reserve, and west by the east line of lot number 6, range 2, district 1." (15) A deed from Nic Woller and his wife Theresa to Sam Johnson, dated January 28, 1890, and duly recorded, conveying the whole of the aforesaid lot number 9 by the same description as the last preceding deed, and also calling for the east line of lot number 6, range number 2, district number 1, as being the west line of lot number 9, said deed reciting also that it was the intention of the vendors to convey all of lot number 9 except the right of way of the Galveston, Harrisburg & San

Antonio Railroad Company. (16) The appellees Dignowity and Sullivan hold under deeds from Johnson.

12. The following sketch shows the several parts of lot 9 as they were sold by Charles Wenzel after he purchased the original lot.

[SEE SKETCH C.]

13. In the "land book" containing official records of sales of 1852 of city of San Antonio, kept in the city clerk's office, there appears the following entry: "Lot number 9, range 2, district 1, 140 acres sold to Charles Wenzel, $235.00." The figures "125" being written on the line, and the figures "140" above the "125," a line being drawn through "125." The figures "140" are written in different ink from that with which the figures "125" were written.

14. The following copy of entries contained in an official book of land sales found in and forming a part of the archives of the city clerk of the city of San Antonio, which book was a compilation of land sales made by the city, the compilation having been made under the direction of the council in 1878, and adopted by the council, and has since been kept by the city as an official record of land sales, and all entries as to sales of land by the city made since 1878 having been in said book. It appears from the book that an account purports to have been made therein of each block sold by the city and the amounts realized therefrom, and the deeds and releases executed by the city. In connection with lot 9, range 2, district 1, said book shows:

| DATE. | GRANTEE. | REMARKS. |
| --- | --- | --- |
| Nov. 9, 1852 ... | Charles Wenzel ................. | Contract $235; vendor lien 188 K. 2, 374; deed recites 125 5-100 acres. |
| April 10, 1863.. | Ferdinand Urbahn ............. | Deed T. 2, 68, 50 acres off western side. |
| June 16, 1870 .. | H. B. Adams and E. D. L. Wickes .. | Deed V. 2, p. 401; deed reads 15 50-100 acres. Balance purchase money paid June 15, 1870. |

15. On December 31, 1889, Woller and Theresa, his wife, made a deed to Sam Johnson, which was duly recorded, conveying, subject to vendor's lien, "Our entire place, or ranch, containing 120 acres, about three miles northeast of Alamo plaza, of San Antonio, Texas, out of the original city lot number 9, range 2, district 1, known as the old Woller homestead, bounded north by Seguin street, east by property of Kampmann and Sandmeyer, on south by old Railroad reserve, and west by property of Adams and Wickes, excepting right of way of Galveston, Harrisburg, & San Antonio Railway Company and wagon road." Their deed January 28, 1890, referred to in subdivision 14 of

SKETCH C.

our eleventh conclusion of fact, was made in lieu of this deed at the instance of appellees, Nic Woller not knowing the difference in the two deeds.   Woller lived on the land from the time he purchased it up to the time he sold it to Johnson.   He knew where the east line of the old two-league grant is, had it fenced to that line, which he regarded as the dividing line between his property and that of Adams and Wickes, and never claimed west of it.

*Conclusions of Law.*—It is contended by the appellants that the evidence shows that the authority granted by the city council of San Antonio under which the deed was made to Charles Wenzel, dated November 9, 1852, and under which appellees claim title to the land in controversy, did not extend to any lands of the city inside the limits of the "two-league grant," and as the 15½ acres in controversy is that part of lot 9, range 2, district 1, inside the "two-league grant," the deed to Wenzel is without authority to support it, so far as the land in controversy is concerned, and passed no title thereto from the city; and that therefore the judgment of the lower court is not supported by the evidence.

It is a principle of well established law, that a deed made in behalf of a corporation and not authorized by some act or resolution of the corporation or its governing body, and not afterwards ratified by the corporation, is not the act of the corporation, nor binding upon it. Dill. Mun. Corp., 4 ed., sec. 581.

It is equally well settled, that a conveyance of real estate regular on its face, and under the corporate seal, executed by a municipal corporation having the power to dispose of its property, will be presumed to have been executed in pursuance of that power, and that it is not necessary for the grantor, or the party claiming under it, to produce the special resolution or ordinance authorizing its execution.   Municipal corporations also possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation of a private nature, unless restrained by charter or statute. Dill. Mun. Corp., 4 ed., sec. 575.

These principles are conceded by appellants and appellees in their briefs.

The burden was on the appellants to prove that the deed of the city to Charles Wenzel was executed without authority, for it is conceded by their counsel that the instrument is sufficient to comprehend the whole of lot number 9, which includes the land in controversy; and that if they failed in this proof they were not entitled to recover, though the authority to make the conveyance may not have been expressly shown by the appellees.

It is clear that the cause which moved the city of San Antonio to subdivide and sell her lands was to effect a settlement with Thomas J. Devine, and that in order to make such settlement it was not necessary,

nor originally intended, that any part of the "two-league grant" should be sold. In making this settlement, according to the terms of the contract, it was necessary to have the lands recovered under the contract surveyed and subdivided into lots. This was done by the city engineer, under the direction and approval of the council, and in doing so he surveyed and subdivided into lots a part of the "two-league grant," and returned his map of the survey, showing such subdivisions, to the city council. The survey and map thereof was approved by the council, and sales were ordered made in accordance with it. And the deed made to Wenzel in 1852 expressly refers to the map for the purpose of identifying the property purchased by him. Before the sale contemplated was made, a duly authorized committee of the council prepared an advertisement, which presumably specified the property originally intended to be sold, which was adopted by the council and ordered published in various newspapers. There was included in the report of the committee, accompanying the form of advertisement, a recommendation, which seems to have been adopted, that would authorize the sale of "any other lots that purchasers might require during the progress of the sale." In order for appellants to establish that there was no authority for the sale of the property in question, they should have proved that lot number 9, range number 2, district number 1, was not specified and enumerated in the advertisement of the sale authorized and adopted by the council. This they failed to do. As the lot was sold to Wenzel at the time the sale was ordered to be made, it is fair to presume, in the absence of the advertisement, that it was mentioned therein, and that authority was thereby given by the city to make the sale.

In some of the mesne conveyances from Wenzel to appellees the land is so described as not to include that in controversy, but this misdescription was corrected by subsequent deeds, and all of them which are essential to appellees' title embrace the land in controversy. Under the deeds set out in our conclusions of fact, it is apparent that appellees acquired all the land that was conveyed by the city to Wenzel. The deed of July 15, 1856, from Wenzel, conveyed to Ferdinand Urbahn 50 acres of land "to be taken from the western portion of lot 9, range 2, district number 1," saying: "The land herein conveyed being bounded * * * west by lot number 6, range number 2, district number 1, east by that portion sold William Urbahn." On April 10, 1863, the city of San Antonio by final deed conveyed the same 50 acres to Ferdinand Urbahn, describing it as "50 acres off western portion of lot 9, range number 2, district number 1, which lot was bid off by Charles Wenzel at public sale on November 9, 1852, who conveyed his interest in said 50 acres to Ferdinand Urbahn." This establishes the recognition by the city of the sale to Wenzel, and fully confirms, adopts, and ratifies the deed it made to him in 1852. This 50 acres includes the very land in controversy, and as appellees hold un-

der a regular chain of title from Urbahn down to themselves, we think the judgment of the District Court in their favor is correct, and it is affirmed.

*Affirmed.*

Delivered March 12, 1894.

JAMES, Chief Justice, having been of counsel, did not sit in this case.

Motion to amend conclusions of fact, May 23, 1894.

Writ of error refused, May 31, 1894.